UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RONNIE McGRIFF,

                Plaintiff,

      V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**REPORT AND RECOMMENDATION**

08-CV-952
(LEK/VEB)

---

## I. INTRODUCTION

In August of 2005, Plaintiff Ronnie McGriff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that he has been disabled since July 14, 2004, due various mental ailments and a back impairment. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, represented by counsel, commenced this action on September 9, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On September 16, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 13).

## II. BACKGROUND

The relevant procedural history may be summarized as follows. In August of 2005, Plaintiff applied for DIB and SSI benefits, alleging that he had been disabled since July 14, 2004. ($T^1$ at 14, 50-52). The Commissioner initially denied the application on January 10, 2006. (T at 14, 45-49). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on February 22, 2006. (T at 14, 39). On October 10, 2007, a hearing was held before ALJ J. Lawson Brown. (T at 148). Plaintiff, accompanied by a representative, appeared and testified at the hearing. (T at 14, 148).

On October 17, 2007, the ALJ issued a written decision denying Plaintiff's applications for benefits. (T at 14-24). The Appeals Council denied Plaintiff's request for review on July 14, 2008. (T at 3-6).

Plaintiff commenced this action by filing a Complaint on September 9, 2008. (Docket No. 1). Plaintiff filed a Brief in support of his Complaint on March 23, 2009. (Docket No. 10). The Commissioner filed a Brief in opposition on May 7, 2009. (Docket No. 11). Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED.

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No.7).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

## III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

4

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

    **1.   Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2009. (T at 16). The ALJ also found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 14, 2004. (T at 16). The ALJ determined that Plaintiff has the following impairments considered "severe": a back impairment, dysthymic disorder, panic disorder, antisocial personality disorder and cocaine abuse, in remission.  (T at 16). The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 17).

The ALJ determined that Plaintiff has the residual functional capacity to perform "light" work that is "simple and unskilled in nature."  (T at 19).  Specifically, the ALJ found that Plaintiff is able to do light work that "takes into account occasional problems with maintaining attention and concentration, accepting instructions or criticism from

5

supervisors, interacting appropriately with others, and responding appropriately to changes and work pressures in the work setting." (T at 19). The ALJ also determined that Plaintiff is able to sit, stand or walk for six (6) hours in an eight (8) hour workday and is able to lift ten (10) pounds frequently and twenty (20) pounds occasionally. (T at 19).

The ALJ found that Plaintiff is unable to perform his past relevant work as a nurse's aide. (T at 23). The ALJ noted that Plaintiff, born on July 14, 1974, was a "younger individual" on the alleged disability onset date. (T at 23).

The ALJ found that considering Plaintiff's age, education (high school), work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. (T at 23). Accordingly, the ALJ concluded that Plaintiff is not under a "disability," as that term is defined under the Act, and denied the application for benefits. (T at 24).

As noted above, the ALJ's decision became the Commissioner's final decision on July 14, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 3-6).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. He offers five (5) principal arguments in support of that position. First, Plaintiff asserts that new evidence undermines the ALJ's conclusion that he retained the ability to meet the basic mental demands of competitive, renumerative, unskilled work, and that such a finding is unsupported by substantial evidence. Second, Plaintiff contends that the ALJ's residual functional capacity assessment is not support by substantial evidence. Third, Plaintiff argues that the ALJ misstated portions of his testimony regarding his attempt to find

employment and then improperly relied on that misstatement to evaluate Plaintiff's credibility and determine his residual functional capacity. Fourth, Plaintiff asserts that the ALJ erred in giving little weight to consultative examiner Annette Payne, Ph.D.'s opinion. Fifth, Plaintiff argues that the ALJ's credibility determination was undermined by a mischaracterization of Plaintiff's testimony concerning the care of his children. The Court will discuss each argument in turn in turn.

### a. New Evidence

The Social Security Act provides that a district court may remand a case to the Commissioner to consider additional evidence that was not included as part of the original administrative proceedings. See 42 U.S.C. § 405(g) (sentence six) ("The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.").

This type of remand, commonly referred to as a "sentence six remand," is only appropriate if new, non-cumulative evidence presented to the District Court should be considered by the Commissioner *and* if the claimant can establish good cause for having failed to present the evidence during the original administrative proceedings. See Lisa v. Sec'y of Dep't of Health and Human Servs., 940 F.2d 40, 43 (2d Cir.1991).

In the Second Circuit, courts employ a three-prong test to determine whether a sentence six remand is warranted. Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir.1988). First, the evidence must be "new" and not merely cumulative of evidence in the administrative record. Id. (citing Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833 (3d Cir.1984)). Second, the new evidence must be "material," *i.e.* "it must be

relevant to the claimant's condition during the time period for which benefits were denied and probative." Id. (citing Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir.1975)). The "materiality" prong further requires a finding that there is a reasonable possibility that the new evidence would have changed the outcome before the Commissioner. See Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir.1991).  Third and finally, the plaintiff must demonstrate good cause for failing to present the evidence earlier. Lisa, 940 F.2d at 43.

In this case, Plaintiff argues that a sentence six remand is required to enable the Commissioner to consider a "consultant intelligence evaluation" performed by Dr. Annette Payne in October of 2008.  In that evaluation (Docket No. 10, Exhibit 1), Dr. Payne concluded that Plaintiff had a full scale IQ of 73, which is in the borderline range of intelligence.  Plaintiff contends that this finding undermines the ALJ's decision, in which the ALJ (relying upon an earlier consultative evaluation performed by Dr. Payne) concluded that Plaintiff's "cognitive functioning was probably in the average range." (T at 22).

This Court finds that a sentence six remand is not warranted.  Dr. Payne's October 2008 report is essentially consistent with the October 2005 report that the ALJ relied upon. Indeed, to the extent the 2005 report differs from the 2008 report, the latter report is actually *more supportive* of the ALJ's ultimate determination.  In both reports, Dr. Payne did not indicate or suggest that Plaintiff's mental impairments disabled him from work.  In fact, she opined in both reports that Plaintiff would benefit from vocational rehabilitation, which is suggestive of an ability to resume work. (T at 106; Docket No. 10, Exhibit 1 at p. 5).

In the October 2005 report, Dr. Payne concluded that Plaintiff's psychiatric difficulties were "moderately limiting." (T at 105).  She noted that he would have difficulties following

and understanding simple directions and instructions, performing simple tasks, dealing with stress, maintaining a regular schedule, learning new tasks and performing complex tasks, and making appropriate decisions and relating with others. (T at 105). Dr. Payne opined that Plaintiff would need assistance with his own financial management. (T at 106). Dr. Payne indicated that Plaintiff's cognitive functioning was "probably in the average range." (T at 105).

The October 2008 report actually indicates that, in Dr. Payne's estimate, Plaintiff's condition has improved. She believed that he could follow and understand simple directions and instructions and perform simple tasks. (Docket No. 10, Exhibit 1, at p. 5). Dr. Payne further opined that Plaintiff could manage his own financial affairs. (Docket No. 10, at p. 6).

Given the opportunity to consider Dr. Payne's October 2008 report, it is likely that he would qualify or modify his statement in conformity with Dr. Payne's 2008 report. However, there is no likelihood that the ALJ would change his ultimate residual functional capacity assessment. If anything, the ALJ would most likely conclude that the October 2008 report would be even more supportive of his overall assessment, as evidenced by the fact that the ALJ found Plaintiff had the residual functional capacity to engage in simple, unskilled work-related activities, despite his mental limitations. (T at 24). As discussed below, this is generally consistent with Dr. Payne's October 2005 assessment and certainly consistent with her October 2008 assessment.

By finding that Plaintiff was unable to perform work that was semi-skilled or skilled, the ALJ already accounted for the functional limitations noted in both reports with regard to Plaintiff's ability to complete detailed or complex tasks. (T at 23). Moreover, this is not

9

a case where the subsequent IQ testing demonstrated an IQ low enough to satisfy the requirements of § 12.05 (C) of the Listings.[4]  Accordingly, because this Court finds there is no reasonable probability that the Commissioner would reach a different conclusion upon consideration of the new evidence, a sentence six remand is not warranted.

### b. Substantial Evidence

To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

Plaintiff asserts that the ALJ's determination that he retained the ability to meet the basic mental demands of competitive, remunerative, unskilled work is not supported by substantial evidence.  In support of that argument, Plaintiff cites to Dr. Payne's October 2005 consultative examination report, in which (as noted above) she opined that Plaintiff would have difficulties following and understanding simple directions and instructions, performing simple tasks, dealing with stress, maintaining a regular schedule, learning new tasks and performing complex tasks, and making appropriate decisions and relating with others. (T at 105).

"The basic mental demands of competitive, remunerative, unskilled work include the

---

[4]Section 12.05 is the Listing for mental retardation.  As used in connection with that Listing, "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Id. Mental retardation is established when one of four sets of criteria are met.  A claimant who is found to meet these requirements is presumed disabled at step three without further inquiry. See 20 C.F.R. § 404.1520(a)(4)(iii).  Sections (C) and (D) are the only sections of the Listing that even arguably apply here and both require a "valid verbal, performance, or full scale IQ of 60 through 70," which Plaintiff has not established.

abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.  "A *substantial* loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.  (emphasis added).

The record contains sufficient evidence to support the ALJ's conclusion that Plaintiff's mental impairments did not cause a substantial loss of ability to meet any of these basic work-related activities.  Although Dr. Payne's October 2005 report noted "difficulties" with regard to some of these activities, her overall assessment was that Plaintiff's psychiatric difficulties were only "moderately limiting."  (T at 105).  There is no indication that she believed Plaintiff had suffered a substantial loss of ability to perform the basic work-related activities identified in SSR 85-15. Indeed, Dr. Payne indicated that Plaintiff's cognitive functioning was "probably in the average range," that his recent and remote memory skills were "[g]rossly intact," that he was alert and oriented, and that his attention and concentration were only mildly impaired. (T at 104-105).  As noted above, Dr. Payne's observation that Plaintiff would benefit from vocational rehabilitation is inconsistent with, and does not support, Plaintiff's contention that he is disabled from employment.

The ALJ's assessment was also supported by the findings of the State Agency review psychiatrist, who determined that Plaintiff had only mild restriction with regard to his activities of daily living and moderate restrictions in terms of social functioning and maintaining concentration, persistence or pace. (T at 123).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed

to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

For the foregoing reason, this Court finds that the ALJ's residual functional capacity assessment was supported by substantial evidence.

### c.    Credibility as to Fast Food Employment

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints . . . ." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir.1984) (citations omitted).  The ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999)

Plaintiff asserts that the ALJ misstated portions of his testimony and then relied on that misstatement when determining his credibility and residual functional capacity.  In support of this contention, Plaintiff points to the following two portions of the ALJ's decision:

> At the hearing, the claimant testified that . . . [h]e had tried to obtain fast food clerk jobs, but felt as though the work was beneath him.
>
> The claimant had been able to function as a certified nurse's assistant for 11 years. He had also been able to secure employment as a fast food worker, but did not want to continue working at a job that he felt was beneath him.

(T at 20, 22).

This Court finds no material inconsistency between the ALJ's statements and the relevant portion of Plaintiff's testimony, which was as follows:

> Q: Did you try to obtain jobs in different fields?
> A: Yes. After I, after I got exhausted of, of looking for – trying to get into my own field, I was desperate at the time, and yes, I have.
> Q: Okay. What sort of employment did you try?
> A: Burger King, McDonalds, and that kind of like, it kind of like, that, that belittles me. That makes me, makes me ashamed of myself, of what I – of going through a career – promising a career that has goals of being RN's –
> ALJ: Did you think you could have done those jobs?
> A: Oh yeah. What jobs? What, what are you taking about? CNA?
> ALJ: I'm talking about burgers and McDonalds.
> A: Oh, no, huh-uh.
> ALJ: Why?
> A: Because mentally, it bothers me.
> ALJ: You mean it's –
> A: After I went back to school –
> ALJ: – beneath you?
> A: Yes, because – not that it's beneath me; because I've grown to, I've grown to establish a career that establishes goals in life. I worked hard to get where I have established, and it just got all yanked out from – "

(T at 155-56). Although Plaintiff avoided adopting the ALJ's specific formulation that he considered the fast food work "beneath" him, that is the clear implication of his testimony, namely, that he was mentally capable of performing the work, but considered it belittling and bothersome because he was overqualified. This Court accordingly finds no reversible error with respect to the ALJ's credibility determination.

### d. Consideration of Dr. Payne's October 2005 Report

13

In his fourth claim, Plaintiff restates, in sum and substance, the argument set forth in his second claim, namely, that Dr. Payne's October 2005 report established that he was disabled and should have been afforded controlling weight. For the reasons stated above, this Court finds that the ALJ's assessment was supported by substantial evidence and this claim must therefore also fail.

### e.     Credibility Concerning Care of Children

Plaintiff also contends that the following two statements from the ALJ's decision mischaracterize his actual testimony:

> At the hearing, the claimant stated that he was able to care for his two youngest children, who were one and two years old.
>
> The claimant was able to care for two small children on a daily basis.

(T at 18, 20).

This Court finds no material inconsistency between the ALJ's statements and the relevant portion of Plaintiff's testimony, which was as follows:

> Q:    Now, you have children living with you? How many children do you have living with you?
> . . .
> A:    Two.
> Q:    How old are they?
> A:    One and two.
> Q:    And you take care of them?
> A:    They're whole dependency depends upon me, yes.
> Q:    Okay. Are you able to take care of them —
> A.    Not –
> Q:    – constantly?
> A:    Not 99 percent, but yes. I, I have, I have help if I need help.
>
> ...
>
> ALJ:  You take care of them personally?
> A:    Yes.
> ALJ:  You feed them, and bathe them, and --

14

> A: Right from the day they came out their mother's womb. Taught them their first steps.

(T at 158-59). Although Plaintiff did indicate that he needed help caring for the children during periods in which he mental impairments "get the best of" him (T at 160), the ALJ's conclusion is supported by a fair reading of Plaintiff's testimony and this Court finds no reversible error as to the ALJ's credibility determination in this regard.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including Plaintiff's treating providers, and afforded Plaintiff's subjective claims an appropriate weight when rendering a decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   October 27, 2009

    Syracuse, New York

### V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C.

§636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

October 27, 2009

/s/ Victor E. Bianchini
Victor E. Bianchini
United States Magistrate Judge